UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA R. S. H., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] <br><br> Defendant. | Case No. 2:17-cv-02623-KES <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## BACKGROUND

On February 8, 2012, Lisa R. S. H. ("Plaintiff") filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") alleging disability commencing January 19, 2011. Administrative Record ("AR") 314-15, 318-21. She had injured her back working as a security guard lifting pallets and "tossing them … into the back of the truck …." AR 3118; see also AR 2981. In 2013, her employer gave her a position training new hires with special

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security."

1

accommodations for medical appointments, but she was "pushed out" after a few months. AR 3123-24.

On April 17, 2014, an Administrative Law Judge ("ALJ") conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"). AR 103-67. The ALJ conducted a supplemental hearing on September 18, 2014. AR 38-102. On October 31, 2014, the ALJ issued a decision denying Plaintiff's applications. AR 11-31.

Plaintiff appealed; on May 13, 2016, the District Court reversed the decision of the Commissioner and remanded for further proceedings. AR 3280-88; Henry v. Colvin, No. CV 15-3064-KES, 2016 U.S. Dist. LEXIS 64340, at *1 (C.D. Cal. May 13, 2016) (finding limitation to "simple" work does not account for "moderate" difficulty maintaining concentration, persistence, and pace).

Upon remand, Plaintiff moved to amend her application for a closed period of disability from January 19, 2011, through October 31, 2014. AR 3078. A new ALJ granted Plaintiff's motion and limited review to that time period. AR 3079. The ALJ conducted a further hearing on October 18, 2016. AR 3102-33. The ALJ published an unfavorable decision on December 8, 2016. AR 3078-92.

The ALJ used the five-step sequential evaluation process to guide her decision. See 20 C.F.R. §§ 404.1520; 416.920. At step one, the ALJ found that Plaintiff did not engage in disqualifying substantial gainful activity from January 19, 2011, through October 31, 2014. AR 3081. Plaintiff returned to disqualifying substantial gainful activity on November 1, 2014, by working as a security guard. AR 3081, 3116.

At step two, the ALJ found that Plaintiff suffered from medically determinable severe impairments consisting of "degenerative disc disease of the lumbosacral spine; degenerative disc disease of the cervical spine; adhesive capsulitis of the left shoulder; depressive disorder; and anxiety disorder." AR 3081. At step three, the ALJ found that none of these impairments met or equaled a listed

impairment. AR 3082.

Despite these impairments, at step four the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work, as follows:

> [L]ift and carry 20 pounds occasionally, 10 pounds frequently, standing and walking for 6 hours during an 8-hour workday, sitting for 6 hours. The claimant was also limited to occasional postural activity. Mentally, the claimant was limited to remembering, understanding and carrying out simple routine work instructions. She could maintain attention, concentration and pace, generally, for two-hour increments in the performance of simple, routine work instructions, subject to customary breaks and lunches. The claimant was precluded from assembly line work or other fast-paced work environments. In addition, she was limited to work environments with no public interaction and no more than occasional, brief, superficial and task-oriented interactions with coworkers and supervisors. The claimant could make no more than occasional simple work-related judgments typical of unskilled work, and could perform work involving no more than occasional work changes, gradually introduced.

AR 3083.

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff could not perform her past relevant work. AR 3090-91. At step five, however, the ALJ found that Plaintiff could work as a routing clerk, Dictionary of Occupational Titles ("DOT") 222.687-022; mail clerk, DOT 209.687- 026; and bagging salvager, DOT 689.687-010. AR 3092. The ALJ therefore concluded that Plaintiff was not disabled between January 19, 2011, and October 31, 2014. See AR 3079, 3092.

# II.
# STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Comm'r of SSA, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination." Stout v. Comm'r of SSA, 454 F.3d 1050, 1055 (9th Cir. 2006).

# III.
# ISSUE PRESENTED

Plaintiff's appeal presents the following three issues:

Issue One: Whether the ALJ's assessed RFC is supported by substantial evidence. Plaintiff contends that the ALJ failed to provide specific, legitimate reasons for rejecting the 2014 opinions of treating psychiatrist, Dr. Gennady

Musher.

Issue Two: Whether the ALJ properly evaluated Plaintiff's subjective symptom testimony.

Issue Three: Whether Plaintiff can perform the occupations identified under step five of the sequential analysis.

(Dkt. 24, Joint Stipulation ["JS"] at 7.)

## IV.
## DISCUSSION

A. **ISSUE ONE: Dr. Musher.**

### 1. Rules for Weighing Conflicting Medical Evidence.

In deciding how to resolve conflicts between medical opinions, the ALJ must consider that there are three types of physicians who may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended on April 9, 1996). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830.

The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick, 157 F.3d at 725); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)).

If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d 821, 830 (9th Cir. 1996) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).

However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Orn, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(d)(2)(i)-(ii)).

"An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008); see also Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989) (holding that a treating physician's reliance on a patient's own discredited subjective complaints is a specific and legitimate reason for discounting the physician's opinion).

Likewise, an ALJ's finding that the treating physician's opinion is unsupported by the record is sufficient. See Tommasetti, 533 F.3d at 1041 (explaining that an "incongruity" between a treating physician's questionnaire responses and a patient's medical records is a "specific and legitimate reason" for discounting the physician's opinions).

**2. Summary of Dr. Musher's Opinions.**

On December 12, 2013, Dr. Tuller (a psychologist) and Dr. Musher (a psychiatrist) co-signed a report titled "Primary Treating Physician's Initial Psychiatric Evaluation and Report and Request for Authorization of Treatment" in connection with Plaintiff's workers' compensation claim (the "2013 Report"). AR 2980-98. Per the 2013 Report, Plaintiff worked as a security guard from 2008 through July 18, 2013. AR 2981. Plaintiff's answers to questions about her mental health were consistent with severe anxiety, depression, social phobia, and other

conditions. AR 2987-88. The doctors concluded that Plaintiff was "suffering from marked mental distress that manifests itself in symptoms of depression, anxiety, and insomnia." AR 2993. They further concluded that her psychic injuries were the result of her industrial accident. AR 2994.

As "functional consequences," the doctors opined that her "mental health symptoms lead to markedly reduced impairment in social relationships, daily activities, and ability to provide for self." AR 2995. They found her temporarily totally disabled ("TTD") on a psychiatric basis since December 12, 2013 (i.e., the date of their report) and predicted that her TTD would last until February 12, 2014; they could not predict when Plaintiff would be able to return to her "pre-injury occupation." AR 2996. They determined that she had not yet reached maximum medical improvement and restricted her against work involving "excessive stress." AR 2995-96.

On July 21, 2014, Dr. Musher provided a "Permanent and Stationary Psychiatric Evaluation and Report" for Plaintiff's worker's compensation claim (the "2014 Report"). AR 3539-57. Dr. Musher noted that since the 2013 Report, Plaintiff had received mental health treatment. AR 3541. Plaintiff "reported having improvement in her condition," and it was "recommended that she continue with the same treatment regimen." Id. Dr. Musher again administered tests and found that Plaintiff was still "suffering from marked mental distress that manifests itself in symptoms of depression, anxiety, and insomnia," although some tests scores improved. AR 3551-52. Dr. Musher concluded that "after the passage of time and provided treatment, her mental health has mildly improved and stabilized …." AR 3553. He still characterized her "overall degree of general mental distress" as "marked." Id.

Regarding functionality, he determined that Plaintiff had reached maximum medical improvement from a psychiatric perspective. AR 3553. He assessed a Global Assessment of Functioning ("GAF") score of 57, which equated to a whole

person impairment rating of 20%. Id. He determined that Plaintiff was TTD from December 12, 2013 through October 12, 2014, but nevertheless opined that she could "continue with her usual and customary employment." AR 3554. He also opined that "future work restrictions are not indicated from a psychological perspective."[2] Id.

Thus, the 2014 Report does not have any medical opinions concerning Plaintiff's functional limitations that are more restrictive than the 2013 Report, but it does specify a slightly longer period of TTD.

### 3. The ALJ's Treatment of Dr. Musher's Opinions.

The ALJ addressed Dr. Musher's opinions as follows:

> Dr. Musher, a psychiatrist, and Dr. Tuller, a psychologist, evaluated the claimant in mid-December 2013, opining that she was "temporarily totally disabled" from December 12, 2013 until February 12, 2014, that she was unable to continue with her usual and customary employment, and should be precluded from excessive stress and from contact with her previous supervisor (Exhibit 20F, p. 18) [AR 2996]. They also claimed that she had "marked deficits" in areas of attention and attention and concentration, visiospatial abilities, auditory memory, learning and processing speed (Exhibit 20F, p. 17) [AR 2995]. While I agree that the claimant is unable to perform her past relevant work, I afforded their opinions little weight. To begin, their assessments encompass only a two-month period, a period of time insufficient for the purpose of establishing "disability"

---

[2] Plaintiff characterizes Dr. Musher's report as finding that Plaintiff "could not engage in any substantial gainful activity from 2011 until October 31, 2014." (JS at 13.) In fact, Dr. Musher found in July 2014 that Plaintiff had reached maximum medical improvement and could return to work without restriction. AR 3553-54.

8

| | under the Social Security Act. Further, as indicated above, in the |
|---|---|
| 1 | |
| 2 | workers compensation context, the term "temporary total disability" is |
| 3 | frequently utilized to mean that an individual is unable to perform |
| 4 | their immediate past employment. To the extent this was their intent, |
| 5 | Drs. Musher and Tuller's opinions are not materially inconsistent with |
| 6 | my findings herein. However, to the extent they intended otherwise, |
| 7 | as explained above, objective medical evidence and the claimant's |
| 8 | treatment history failed to support the complete inability to work. |
| 9 | Further, for reasons explained above, their opinions regarding |
| 10 | "disability" are beyond the scope of their expertise. With respect to |
| 11 | their assertion that the claimant has "marked deficits" in areas of |
| 12 | cognitive functioning, there is little corroboration for this assertion in |
| 13 | the medical record, and assuming that these findings were valid at the |
| 14 | time, little evidence that they persisted for more than a brief period. |

AR 3089-90.

The ALJ also generally explained that GAF scores do not correlate to disability based on mental impairment for purposes of obtaining DIB or SSI. AR 3090.

**4. Analysis of Claimed Errors.**

     a. Failure to Address 2014 Report.

Plaintiff contends that the above-cited discussion from the ALJ's decision fails to address the 2014 Report. (JS at 9.) The ALJ's discussion cites to Exhibit 20F, which is the 2013 Report, and it refers to Drs. Musher and Tuller, the co-authors of the 2013 Report, together. Plaintiff argues that the ALJ's failure to give reasons for "rejecting" the 2014 Report is reversible error. (Id.)

Plaintiff, however, fails to identify any medical opinion in the 2014 Report that is different from the 2013 Report or inconsistent with the RFC – other than the ultimate finding that Plaintiff was TTD during a few additional months. In federal

9

administrative disability proceedings, the finding of disability (or non-disability) is reserved to the Commissioner. McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2011) ("The law reserves the disability determination to the Commissioner."). Thus, even if the ALJ only gave reasons for rejecting the medical opinions in the 2013 Report, Plaintiff has failed to show prejudicial error.

### b. Failure to Address All Regulatory Factors.

Plaintiff contends that before giving "little weight" to the 2013 Report or 2014 Report, the ALJ was required to address in her written decision all the factors in 20 C.F.R. § 404.1527(c). (JS at 13-14, citing Trevizo v. Berryhill, 871 F.3d 664 (9th Cir. 2017).) In Trevizo, the Ninth Circuit held that "[w]hen a treating physician's opinion is not controlling," it must be "weighted according to factors such as the length of the treatment relationship and the frequency of the examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)).

As courts applying the Ninth Circuit's decision have noted, "Trevizo does not demand a full-blown written analysis of all the [§ 404.1527(c)] factors; it merely requires some indication that the ALJ considered them." Hoffman v. Berryhill, No. 16-cv-1976-JM-AGS, 2017 U.S. Dist. LEXIS 136353, 2017 WL 3641881, at *4 (S.D. Cal. Aug. 24, 2017), report and recommendation adopted by 2017 U.S. Dist. LEXIS 212090, 2017 WL 4844545 (Sept. 14, 2017); accord Yantos v. Berryhill, No. 15-cv-2733-JAH-BGS, 2018 U.S. Dist. LEXIS 25339, 2018 WL 899126, at *6 (S.D. Cal. Feb. 14, 2018) ("The ALJ is certainly required to consider all of the [§ 404.1527(c)] factors, but the regulations and rulings contain no requirement that each and every factor be specifically analyzed in the ALJ's decision."); Standen v. Berryhill, No. 2:16-cv-1267-EFB, 2017 U.S. Dist. LEXIS 156775, 2017 WL 4237867, at *8 (E.D. Cal. Sept. 25, 2017) ("The court concludes that it should not read into Trevizo a requirement that ALJs explicitly recite an

analysis of each § 404.1527(c) factor in each of their decisions. Rather, <u>Trevizo</u> requires that the record reflect that the ALJ actually considered and applied the appropriate factors."). Thus, the ALJ's decision must be sustained if "the record sufficiently shows [that the ALJ] considered the necessary elements." <u>Hoffman</u>, 2017 U.S. Dist. LEXIS 136353, 2017 WL 3641881, at *4.

As to the 2013 Report, the ALJ discussed the length of the treating relationship and the report's supportability/consistency with the record. AR 3089-90. The ALJ also acknowledged the doctors' specialization in mental health. AR 3089. Plaintiff's only argument that the ALJ's consideration of the regulatory factors was deficient is that the ALJ did not *repeat* this analysis for the 2014 Report, even though such a repetition would have been useless, because the 2014 Report did not contain and new medical opinions more restrictive than the 2013 Report. In this context, the ALJ did not commit prejudicial legal error.[3]

B. **ISSUE TWO: Plaintiff's Subjective Symptom Testimony.**

**1. Rules Governing the Evaluation of Subjective Symptom Testimony.**

An ALJ's assessment of pain level is entitled to "great weight." <u>Weetman v. Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989) (citation omitted); <u>see also</u> <u>Nyman v. Heckler</u>, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

If the ALJ finds that a claimant's testimony as to the severity of his pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not

---

[3] The Court agrees that the ALJ was discussing the 2013 Report and not the 2014 Report, and therefore the Court does not reach claims of error that assume that the ALJ was discussing the 2014 Report.

11

arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958. If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering,[4] the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).

In assessing a claimant's subjective symptom testimony, ALJs should consider, in addition to the objective medical evidence: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any

---

[4] Defendant argues that the ALJ found affirmative evidence of malingering. (See JS at 24); see also AR 3084-85 (ALJ noting Plaintiff's "lack of effort" as recorded by an examining doctor). The Court does not need to reach this, because Plaintiff's arguments fail under the higher "clear and convincing" standard.

12

measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529, 416.929 (effective to March 26, 2017).

### 2. The ALJ's Evaluation of Plaintiff's Testimony.

The ALJ summarized Plaintiff's testimony about the limiting effects of her physical and mental symptoms. AR 3083-84. The ALJ found that while Plaintiff's impairments could reasonably be expected to cause some of the alleged symptoms, Plaintiff's testimony "concerning that intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record." AR 3084. The ALJ then summarized multiple treating records as showing Plaintiff's exertional abilities were greater than she claimed. AR 3084-85. In the "mental realm," the ALJ found that although the record contained evidence that Plaintiff experienced depression and anger at times, those records did not demonstrate the kind of mental impairment that would "preclude her from performing a range of simple, routine tasks." AR 3085. The ALJ then summarized mental health treatment records supporting this finding. AR 3085-86. The ALJ also cited a medical expert who testified at the first hearing that Plaintiff's mental health treating records failed to support the level of symptoms claimed. AR 3086. The ALJ also found that Plaintiff's activities were inconsistent with her claimed level of mental impairment. Id.

Thus, the ALJ gave at least three reasons for discounting Plaintiff's subjective symptom testimony: (1) inconsistency between the degree of Plaintiff's alleged mental impairments and her activities, (2) inconsistency between Plaintiff's testimony and the medical evidence, and (3) lack of supporting objective evidence.

Plaintiff does not appear to contest the lack of supporting objective evidence. (See JS at 18.) Rather, Plaintiff notes correctly that lack of objective medical

evidence cannot form the sole basis for discounting pain testimony. (See id. [citing Burch, 400 F.3d at 681].) The Court therefore examines the ALJ's other two reasons.

          a. <u>Reason One</u>: Inconsistency with Plaintiff's Activities.

ALJs may consider contradictions between a claimant's reported limitations and a claimant's daily activities when assessing subjective symptom testimony. Morgan v. Apfel, 169 F.3d 595, 599-600 (9th Cir. 1999) (claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child" were inconsistent with disabling mental impairment); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability undermined subjective testimony of disabling pain); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995) (claimant's ability to perform "various household chores such as cooking, doing the dishes, going to the store, visiting relatives, and driving" inconsistent with claimed inability to do light work).

The mere fact that a claimant can carry on some daily activities, however, does not defeat a claim of disability. Verigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (claimant's ability to "go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, and read" was not inconsistent with pain testimony where "these physical activities did not consume a substantial part of [her] day"). Moreover, a claimant may engage in activities like walking and swimming "despite pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." Id. Thus, the relevant issue becomes whether the claimant's activities (1) contradict the Plaintiff's testimony, or (2) "meet the threshold for transferable works skills." Orn v. Astrue, 495 F.3d 625, 639 (2007); Derr v. Colvin, 2014 WL 5080437, at *12 (D. Ariz. Oct. 9, 2014) ("Only when a level of activity is inconsistent with a claimant's claims of limitations should those activities have any

bearing on the claimant's credibility.").

As activities inconsistent with disabling mental impairments, the ALJ cited the following: performing personal care, upkeeping her home, attending Santa Monica College, raising a teenage daughter, handling household repairs, driving, taking care of two dogs, leaving the house alone, shopping at stores, taking medication without reminders, and handling money. AR 3086.

Plaintiff argues that her attending Santa Monica College is not inconsistent with claims that she cannot interact with others or do more than simple work. (JS at 19.) In fact, Plaintiff testified that she took four classes; she passed two, received a D in the third and an F in the fourth. AR 3211. While this indicates Plaintiff had some difficulty pursuing her college studies, the fact that she passed two classes is inconsistent with her claims to be unable to do simple work during the same time period.

Plaintiff argues that her ability to "do those activities in the safety of her own home, at her own pace, is nothing more than just consistent with her allegations of depression." (JS at 19.) Some of these activities, however, such as driving and shopping, were not done at home.

Finally, Plaintiff argues that there is no nexus between her ability to do these activities and her ability to do full-time work. (JS at 19.) As discussed above, the issue is whether Plaintiff's ability to do the activities cited by the ALJ is inconsistent with her claimed limitations. Plaintiff claimed that her concentration was "very poor" and she would become "confused on what is being said." AR 364. She would forget what she was talking about in the middle of a conversation. Id. She could not "focus or concentrate" and had "a problem completing tasks." AR 366. She had trouble with memory, completing tasks, concentration, understanding, and getting along with others. AR 364. This level of severe mental impairment is inconsistent with being able to pass two college classes, drive, shop, pay bills, and handle a bank account. AR 362, 3211.

15

b. <u>Reason Two</u>: Inconsistency with the Medical Evidence.

Physically, Plaintiff claimed that she could not "stand for long periods of time." AR 359. She was too weak to mop, sweep, or vacuum. AR 362. After an hour of shopping, her feet and legs started to hurt. <u>Id.</u> She experienced "constant muscle spasms." AR 363. She had difficulty with every physical activity on the Function Report. AR 364. She took "a lot of time to climb stairs." <u>Id.</u>

The ALJ contrasted this with medical evidence noting a normal gait, high exercise tolerance, and 40-pound grip strength. AR 3084, citing AR 1152, 2533, 2902, 2966. On January 31, 2011, Plaintiff generated 10 metabolic equivalents of task ("METs") of effort during a treadmill stress test which "equates with vigorous exercise such as jumping rope and running." AR 3084, citing AR 1795-96.[5] Other physical examinations and tests in 2012 revealed no muscle deficits, normal range of motion, no muscle spasms, high exercise tolerance, and generally unremarkable findings. AR 3084, citing AR 2533, 2902, 2966, 1152-55, 1713-15, 1718, 1723, 1731-32, 1736, 1739, 1743. At least one doctor who examined her in 2014 concluded that "lack of effort" was an issue, because her claimed impairments were "just not consistent" with her demonstrated physical abilities. AR 3084, citing AR 2927-29, 2935 (contrasting claim of left-side weakness with ability to walk on her heels and toes).

Thus, substantial evidence supports the ALJ's finding of inconsistency between Plaintiff's claimed impairments and both her activities and the medical evidence; that inconsistency was a clear and convincing reason to discount Plaintiff's subjective symptom testimony.

---

[5] As another point of comparison, the average middle-age man can reach 10 to 12 METs, about 2 METs more than the average woman. <u>See</u> https://www.nytimes.com/2008/07/29/health/29brod.html.

16

C. **ISSUE THREE: Suitable Alternative Work.**

   **1. Claimed Error.**

Plaintiff contends that her RFC is inconsistent with all three "unskilled" jobs that the VE identified. (JS at 29.) Per Social Security Ruling 82-41, "Unskilled occupations are the least complex types of work. Jobs are unskilled when persons can usually learn to do them in 30 days or less." SSR 82-41(2)(c). Plaintiff argues that a person with her RFC could not "get passed [sic] the 30-day window" of training, because training requires more interactions with supervisors than "occasional, brief, superficial, and task-oriented interactions." (JS at 31.) According to Plaintiff, the ALJ had a duty to ask the VE to explain this apparent conflict between Plaintiff's RFC and the proposed alternative jobs as described in the DOT, but failed to do so. (JS at 31, citing SSR 00-4p.)

   **2. Consistency with the DOT.**

An ALJ may not rely on a VE's testimony that a hypothetical worker with the claimant's RFC can do alternative jobs without first inquiring whether the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing SSR 00-4p). If there is an apparent conflict between the VE's testimony and the DOT, an ALJ must obtain "a reasonable explanation for the apparent conflict." SSR 00-4p. Reasonable explanations for deviating from the DOT include that the DOT "does not provide information about all occupations, information about a particular job not listed in the [DOT] may be available elsewhere, and the general descriptions in the [DOT] may not apply to specific situations." Massachi, 486 F.3d at 1153, n.17 (citing SSR 00-4p). The ALJ must resolve the apparent conflict before relying on the VE's testimony, and must "explain in the determination or decision how he or she resolved the conflict." SSR 00-4p. "The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony …." Massachi, 486 F.3d at 1153; see also Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015) ("The

ALJ must ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination.")

### 3. Summary of the VE's Testimony.

The VE testified that she would alert the ALJ if any of her testimony conflicted with the DOT. AR 3125. The VE testified that a person with Plaintiff's RFC could work as a routing clerk (76,000 jobs in the national economy), mail clerk (71,000 jobs), or bagging salvager (35,000 jobs). AR 3128. The VE also testified that the two clerk jobs had a specific vocational preparation ("SVP") rating of 2, whereas the bagging salvager was rated SVP 1. Id.

A job's SVP rating "speak[s] to the issue of the level of vocational preparation necessary to perform the job." Meissl v. Barnhart, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005) (citation omitted). Learning a job with an SVP of 1 requires only a short demonstration, whereas an SVP of 2 "reflects that the position would require anything beyond a short demonstration up to and including 1 month of training …." Losoya v. Berryhill, No. CV 16-8967, 2017 U.S. Dist. LEXIS 168180, 2017 WL 4564701, at *5 (C.D. Cal. Oct. 11, 2017) (citing Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990); 20 C.F.R. § 416.968(a)).

### 4. Analysis.

Plaintiff failed to identify any apparent conflict between her RFC and the bagging salvager job which has an SVP of 1. Thus, the Court need not consider whether there is a conflict between Plaintiff's RFC and the two clerk jobs if 35,000 jobs nationally constitutes a "significant" number.

In Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 529 (9th Cir. 2014), the Ninth Circuit explained that it had "never set out a bright-line rule for what constitutes a significant number of jobs" and "the ALJ's finding that 25,000 national jobs is sufficient presents a close call." The Ninth Circuit, however, ultimately determined that 25,000 national jobs *was* sufficient. Id. Relying on

Gutierrez, this Court concludes that 35,000 jobs nationally is a "significant" number. Thus, error in connection with the other two position (if any) would be harmless.

## V.
## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: June 21, 2018

_____
KAREN E. SCOTT
United States Magistrate Judge